UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------
In re

        MICHELE L. HURD,                      12-13377 B

                              Debtor
------------------------------------------------------

                Michael A. Weishaar, Esq.
                930 Convention Towers
                43 Court Street
                Buffalo, New York 14202
                Attorney for Debtor

                Mary B. Ilardo, Esq.
                6459 West Quaker Street
                Orchard Park, New York 14127
                Attorney for Creditor Eunice A. Mooradian

                Albert J. Mogavero, Esq.
                110 Pearl Street, 6th Floor
                Buffalo, New York 14202
                Chapter 13 Trustee

Bucki, Chief U.S.B.J., W.D.N.Y

     In this Chapter 13 proceeding, the issue is whether section 1325(a)(5) of the Bankruptcy Code allows the court to overrule a mortgagee's objection to a plan that proposes to divide the collateral into two parcels: one to be abandoned and the other to be retained on condition of payment of a portion of the secured indebtedness.

     Michele Hurd, the debtor herein, operates a tanning salon on property that she and Thomas Hurd, her ex-husband, own at 1781 Park Street in the City of Olean, New York. In 2002, Ms. Hurd and her then husband recognized a need for additional off-street parking. Accordingly, they approached Stephen and Eunice Mooradian to propose the purchase of an empty lot that the Mooradians owned at 1773 Park Street. The Mooradians refused to sell, however, unless Mr. and Mrs. Hurd agreed to purchase both the empty lot and an adjoining residential structure at 1769 Park Street. The Hurds ultimately accepted this demand, and acquired the two parcels for a total price of $95,000. As part of this consideration, Stephen and Eunice Mooradian took back a note

and mortgage for $85,000.  Upon completing the transaction, the Hurds paved the empty parcel to allow its use for parking.  They then leased the house at 1769 Park to residential tenants.

Sometime after their acquisition of 1769 and 1773 Park Street, Michele Hurd obtained a divorce from Thomas Hurd.  Although they presently retain joint title to the properties on Park Street, the divorce decree contemplates that Michele will convey to Thomas her interest in the house at 1769 Park, and that Thomas will convey to Michele his interest in both the salon at 1781 Park and the parking lot at 1773 Park.  Meanwhile, Thomas and Michele Hurd have defaulted in making payment on the note that they gave to the Mooradians.  Consequently, as the surviving owner of the note and mortgage, Eunice Mooradian commenced a foreclosure proceeding in state court.  Before the foreclosure sale could occur, however, Michele Hurd filed a petition for relief under Chapter 13 of the Bankruptcy Code.

Eunice Mooradian has filed a Proof of Claim in which she asserts that her outstanding claim of $98,451.22 is secured by real property at 1769 and 1773 Park Street. She further estimates that these properties together have an approximate value of $75,000.  In schedules filed with her bankruptcy petition, Michele Hurd acknowledges a lesser indebtedness of $72,428.  The debtor also disputes the creditor's property valuation, and contends that the residential property at 1769 Park Street has a fair market value equal to the tax assessment of $52,700 and that the parking lot at 1773 Park Street should similarly be valued at a sum equal to the tax assessment of $10,500. Relying on these values, Michele Hurd proposes a plan under which she would abandon the property at 1769 Park Street but retain the parking lot on condition of payment of its separate market value to Eunice Mooradian.  In furtherance of this proposal, Hurd has filed a motion to modify the Mooradian mortgage, to the effect that the lien on the property at 1773 Park Street would be set at $9,397, that is, a sum determined by

subtracting the outstanding real estate taxes from the property's current full value assessment.

Michele Hurd contends that 11 U.S.C. § 1322(b)(2) allows a debtor in Chapter 13 to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." Because she resides elsewhere than on the two adjoining parcels at 1769 and 1773 Park Street, the debtor believes that she can modify the Mooradian mortgage by splitting its lien as between these properties. The debtor further cites 11 U.S.C. § 1325(a)(5) as authority for the principle that a plan in Chapter 13 may provide for either the retention or surrender of collateral. She proposes, therefore, to surrender the residential unit and to retain the parking lot. Finally, Hurd argues that under 11 U.S.C. § 506(a)(1), the claim of Mrs. Mooradian "is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property." Seeking to retain only an interest in the parking lot, Hurd asks that the allowed secured claim be limited to the net value of that retained parcel.

Eunice Mooradian opposes both the debtor's motion and confirmation of the proposed plan. She contends that the mortgage contains no provision for a division of its lien, but prohibits a partial sale of the collateral, either voluntarily or in the context of foreclosure. Mooradian fears that the debtor's plan will unfairly compromise her claim; that the value of two separated parcels may be less than the value of her unified collateral; and that if she were to foreclose upon only a portion of the collateral prior to completion of the plan, New York law might compel a forfeiture of collection remedies. The creditor argues that the Bankruptcy Code contains no authority to compel a division of collateral. Objecting to treatment different from that proposed for other secured creditors, Mooradian contends that the debtor's plan fails to satisfy the confirmation requirements in 11 U.S.C. § 1325(a)(5).

## Discussion

Section 506(a) of the Bankruptcy Code speaks to circumstances in which an allowed claim may be bifurcated as between secured and unsecured claims. However, any such bifurcation addresses only the status of the claim and not the status of collateral. Nothing in section 506(a) authorizes a debtor to reallocate a secured lien as between different components of the total collateral. To the extent that the debtor seeks such allocation, she must look for authority in other sections of the Bankruptcy Code.

Although 11 U.S.C. § 1322(b)(2) allows a plan to "modify the rights of holders of secured claims," confirmation requires compliance with all of the mandates of Chapter 13, including the provisions of section 1325 of the Bankruptcy Code. In particular, 11 U.S.C. § 1325(a)(5)[1] provides that "with respect to each allowed secured claim," the court shall confirm a plan if it satisfies one of three conditions. The first is that the holder of such claim has accepted the plan. To the contrary, Mooradian has here asserted her opposition. Accordingly, to obtain confirmation, the debtor must satisfy one of the other two conditions as set forth in section 1325(a)(5)(B) and (C).

To qualify for confirmation under 11 U.S.C. § 1325(a)(5)(C), the debtor must surrender the property that secures the allowed secured claim. Alternatively, if the debtor wishes to retain that property, the plan may qualify for confirmation by satisfying the

---

[1] The relevant text of 11 U.S.C. §1325(a) reads as follows:
"[t]he court shall confirm a plan if . . .
(5) with respect to each allowed secured claim provided for by the plan –
   (A) the holder of such claim has accepted the plan;
   (B)(i) the plan provides that –
      (I) the holder of such claim retain the lien securing such claim until the earlier of –
         (aa) the payment of the underlying debt determined under nonbankruptcy law; or
         (bb) discharge under section 1328; and
      (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law; and
   (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
   (iii) if -
      (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
      (II) the holder of the claim is secured by personal property, the amount of such payments shall be not less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
   (C) the debtor surrenders the property securing such claim to such holder."

three part test in 11 U.S.C. § 1325(a)(5)(B). For purposes of the present discussion, the mandate of subdivision (a)(5)(B)(ii) is most critical. It provides that in order to retain property that secures an allowed secured claim, "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim [must be] not less than the allowed amount of such claim." The debtor here contends that her proposed abandonment of the residential unit will satisfy the requirement of section 1325(a)(5)(C) with regard to 1769 Park Street, and that her proposed cash distributions will satisfy the requirement of section 1325(a)(5)(B) with regard to the parking lot at 1773 Park Street. In making this argument, the debtor assumes that she has accurately determined what should be the alleged amount of a claim secured by a portion of the intended collateral. We need not resolve this fact issue, however, because the Bankruptcy Code gives no support for disparate treatment of a single secured claim.

Eunice Mooradian holds a secured claim that arises from a single loan memorialized by a single note and a single mortgage. Possessing only one secured claim, she has appropriately filed a single proof of claim. Section 1325(a)(5) of the Bankruptcy Code speaks to how a plan must deal with "each allowed secured claim." In the absence of a secured creditor's acceptance, the plan must either abandon the collateral or distribute property that is not less than the allowed secured claim. Here, Michelle Hurd proposes a partial distribution of that value but subjects Mrs. Mooradian to the burden of dealing with an abandonment of property in which the debtor's ex-spouse retains an interest. Essentially, the plan achieves partial compliance with both section 1325(a)(5)(B) and section 1325(a)(5)(C), but never completely fulfills the requirements of either. Nothing in the Bankruptcy Code authorizes the imposition of such partial or composite arrangements. Having negotiated a single loan, the debtor must now treat the collateral entirely within a single subdivision of section 1325(a)(5).

To satisfy the requirements of 11 U.S.C. §1325(a)(5)(B), a plan must distribute property having a value, as of the effective date of the plan, that "is not less than the

allowed amount" of the secured claim.  At least one court has recognized that distributed property may include a combination of cash and a portion of the real property that served as collateral for the secured obligation.  *In re Donahue*, 231 B.R. 865 (Bankr. D. Vt. 1998), *reversed on other grounds,* 232 B.R. 610 (D. Vt. 1999).  This, however, is not the plan that Michele Hurd has proposed.  If confirmed, the debtor's plan would not effect a transfer of any real property, but would instead merely allow Mrs. Mooradian an opportunity to recover that real property through foreclosure, perhaps with opposition from the debtor's former spouse.  Combining partial payment with partial abandonment, the debtor's plan is a hybrid arrangement that fails to satisfy any of the allowed options for treatment of a secured claim under section 1325(a)(5).

The proposed plan overreaches.  For all of the reasons recited herein, the objection of Eunice Mooradian is sustained.  The court will deny the motion to modify the Mooradian mortgage and correspondingly, will deny the request to confirm the plan as currently presented.

So ordered.

Dated:     Buffalo, New York                         /s/   CARL L. BUCKI
           May 22, 2013                              Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.